
SLIP OPINION

# SUPREME COURT OF ARKANSAS

No. CR-15-381

| | | |
|---|---|---|
| ADRIAN PATILLO | APPELLANT | Opinion Delivered December 3, 2015 |
| V. | | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. CR-2012-415-1] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE BERLIN C. JONES, JUDGE |
| | | AFFIRMED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

A jury empaneled in the Jefferson County Circuit Court convicted appellant Adrian Patillo of two counts of capital murder. Patillo also pled guilty to one count of possessing a controlled substance. He received sentences of life imprisonment without parole for each of the capital-murder convictions and twenty-five years' imprisonment on the conviction for possession of a controlled substance, with all sentences running concurrently. For reversal, Patillo argues that the circuit court abused its discretion in limiting the scope of Patillo's recross-examination of a witness at trial. We disagree and affirm his convictions and sentences.

The charges against Patillo arose out of an incident that occurred on May 26, 2012, in Pine Bluff, Arkansas. The record of trial reflects that on the day of the murders, Patillo was at Marky Dee's, a local car wash and barbeque catering business owned by Marcus Thorns, one of the victims. Marcus's brother, Odail, was also there, along with Tim Young, Edgar



Goshen, Jr., and the second victim, Jennifer Wainwright. Odail stated that when Patillo arrived at Marky Dee's on the night of the murders, he was high on drugs and acting strange, and eventually Marcus told him he had to leave. Patillo became upset, and he left. Patillo then went to his uncle's house and took a gun. While Patillo was gone, Jeremy Parker arrived at Marky Dee's. A short time later, Patillo returned to Marky Dee's, went into the bathroom, came out with the gun, and shot Wainwright in the face. After he shot Wainwright, Patillo went to the Marky Dee's food-service truck where Young and Marcus were standing, and he shot Marcus in the chest. Odail, Young, Goshen, and Parker ran from the scene when Patillo began shooting. Odail and Goshen ran to a local deli, and a few minutes later, Patillo also arrived there, holding his leg and claiming he had been shot. The owners of the deli called the police, who arrived and transported Patillo to the hospital. Around the same time, the police also responded to reports of a shooting at Marky Dee's, and upon arriving at the business, they found Wainwright and Marcus dead. As part of the investigation of the murders, the police took a recorded statement from Parker.

Parker also testified during the trial. He stated that he was at Marky Dee's at the time of the shootings and witnessed Patillo exit the bathroom with a gun in his hand and shoot Wainwright. He further stated that, following the shootings, Odail ran in the direction of a field that was beside the business. On cross-examination, counsel for Patillo highlighted several inconsistencies between Parker's recorded statement and his testimony at trial. In his recorded statement, Parker indicated that following the shooting, Odail had run toward the lake, but in his trial testimony, he said that Odail had run toward the field.

On redirect examination, the State asked a series of questions in which Parker clarified that he believed that the field and the lake were "almost in the same direction." In closing its redirect examination, the State asked, "In your opinion, is your statement consistent with what you said, what you testified to today, and what you said before? Or is it inconsistent?" Parker responded, "Consistent." Finally, the State asked, "In your mind, is there any difference in what you told the police and what you're saying today?" Parked replied, "No, ma'am."

On recross-examination, counsel for Patillo began to again address the various inconsistencies between Parker's recorded statement and his testimony at trial. The State objected, arguing that the questions on redirect had been confined to the issue of whether there was any inconsistency in Parker's statements that Odail ran toward the lake or toward the field, and that this line of questioning did not open up Parker's entire statement for recross-examination. Counsel for Patillo pointed out that the State had asked the broad question of whether Parker believed that his statement at trial was consistent with his recorded statement and had not qualified the question to refer only to the issue of the direction which Odail had run. The circuit court sustained the objection, noting that counsel could again address the inconsistencies during his closing statement. The jury ultimately convicted Patillo of two counts of capital murder and sentenced him to life imprisonment without parole on each count, and Patillo filed this appeal.

On appeal, Patillo's only argument is that the circuit court abused its discretion in limiting his questions on recross-examination of Parker because the State's questions on

SLIP OPINION

redirect examination regarding the consistency of Parker's statement were broad enough to encompass Parker's entire statement. The State responds that the circuit court did not abuse its discretion because the scope of the prosecutor's questions on redirect were confined to the issue of which direction Odail had run in following the shootings, and because Patillo was able to fully inquire about inconsistencies in Parker's statement on cross-examination.

The scope and extent of recross-examination are within the discretion of the trial court. *Rodgers v. State*, 360 Ark. 24, 199 S.W.3d 625 (2004). This court has stated that the use of cross-examination is an important tool in bringing the facts before the jury and that wide latitude should be afforded by the circuit court. *Woodruff v. State*, 313 Ark. 585, 856 S.W.2d 299 (1993). That being said, this court has also held that a circuit court must determine when the matter has been sufficiently developed and when the outer limits of cross-examination have been reached, and we will not reverse absent an abuse of discretion. *Nelson v. State*, 257 Ark. 1, 513 S.W.2d 496 (1974). Additionally, the circuit court may impose reasonable limits on cross-examination based on concerns about harassment, prejudice, waste of time, unnecessary duplication of testimony, confusion of issues, or interrogation that is repetitive or only marginally relevant. *Edison v. State*, 2015 Ark. 376, ___S.W.3d ___.

The crux of Patillo's argument on appeal is that the circuit court erred in limiting his second inquiry into various inconsistencies between Parker's recorded statement and his testimony at trial. Notably, Patillo addressed numerous inconsistencies during his cross-examination of Parker, and he does not argue that he sought to introduce any new inconsistency in recross-examination. In fact, in his reply brief, he indicates that the excluded

testimony was "a matter of record by way of direct and cross-examination." In other words, Patillo recognizes that the testimony he sought to elicit on recross was merely a repetition of the testimony Parker had already given on cross-examination.

The circuit court did not abuse its discretion in refusing to allow Patillo to rehash testimony from cross-examination on recross. As noted above, we have held that the circuit court may impose reasonable limits on cross-examination to avoid unnecessary duplication of testimony and where it appears that the matter has been sufficiently developed and clearly presented to the jury. *Edison, supra.* In this case, Patillo does not argue that he intended to seek new information on recross; rather, he admits that any testimony that the circuit court excluded was previously admitted in cross-examination. Under these circumstances, the circuit court did not abuse its discretion in limiting Patillo's recross-examination.

In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found.

Affirmed.

*Robinson & Zakrzewski, P.A.*, by: *Luke Zakrzewski*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.